# EXHIBIT C

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   ALPHA GRP, INC. d/b/a RED    )
     BULL GLOBAL RALLYCROSS, a    )
 6   Delaware Corporation,        )
                                  )
 7             Plaintiff,         )
                                  )
 8      vs.                       ) Case No. 2:18-cv-02133-MWF
                                  )
 9   SUBARU OF AMERICA, INC., a   )
     New Jersey Corporation,      )
10                                )
               Defendant.         )
11   _____)

12

13

14        Videotaped Deposition of COLIN SELWYN DYNE,

15        Volume II, taken on behalf of Defendants, taken

16        at 2029 Century Park East, Suite 800, Los Angeles,

17        California, at 10:43 a.m., on Thursday, September 5,

18        2019, before Robin L. Bittel, CSR 6419.

19

20        Job Number.: 572225

21

22

23

24

25
```

Page 201

1   APPEARANCES OF COUNSEL:

2

3   For Plaintiff:

4   BOWSE LAW GROUP

5   BY MICHAEL A. BOWSE

6   801 South Figueroa Street, 25th Floor

7   Los Angeles, California  90017

8   Telephone:  (213) 344-4700

9   Facsimile:  (213) 344-4700

10  mbowse@bowselawgroup.com

11

12  For Defendant:

13  BALLARD SPAHR LLP

14  BY SCOTT S. HUMPHREYS

15  BY NEAL WALTERS (present via videoconference)

16  2029 Century Park East, Suite 800

17  Los Angeles, California  90067

18  Telephone:  (424) 204-4400

19  Facsimile:  (424) 204-4350

20  humphreyss@ballardspahr.com

21

22  Also Present:  Brian Murphy, Videographer

23

24

25

```
                                                         Page 202
 1                       I N D E X

 2

 3        WITNESS:  COLIN SELWYN DYNE

 4        EXAMINATION                               PAGE

 5                  By Mr. Humphreys                207

 6

 7

 8

 9                    E X H I B I T S

10

11     EXHIBIT       DESCRIPTION            IDENTIFIED   MARKED

12     EXHIBIT 45    Amended Notice of      208         435
                     Videotaped Deposition of
13                   Plaintiff Apha GRP, Inc.,
                     Pursuant to F.R.C.P.
14                     30(b)(6)

15     EXHIBIT 46    First Amendment to     229         435
                     On-Premise and
16                   Sponsorship Agreement

17     EXHIBIT 47    2018 - 2022 Sponsorship 234       435
                     Agreement
18
       EXHIBIT 48    Agreement between Red   241        435
19                   Bull and Polaris dated
                     11-26-17
20
       EXHIBIT 49    Sponsorship Agreement   243        435
21                   between Continental Tire
                     The Americas, LLC and
22                   Alpha GRP, Inc.

23     EXHIBIT 50    E-mail from Daniel Chan 278        435
                     to Colin Dyne dated
24                   3-1-17 with attachments

25
```

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 203

| | EXHIBIT | DESCRIPTION | IDENTIFIED | MARKED |
|---|---|---|---|---|

1                  E X H I B I T S

2                      (Continued)

3   EXHIBIT     DESCRIPTION            IDENTIFIED  MARKED

4   EXHIBIT 51  Alpha GRP, Inc.       289       435
                    Consolidated Financial
5                     Statements Year Ended
                    December 31, 2015
6

7   EXHIBIT 52  Alpha GRP, Inc.       290       435
                    Consolidated Financial
                    Statements Years Ended
8                     December 31, 2016, 2015
                    and 2014
9

10   EXHIBIT 53  E-mail from Joseph Miller  316      435
                    to Colin Dyne dated 3-16-17
                    with attachment entitled
11                     "Alpha GRP sale - Memo
                    3-6-2017"
12

13   EXHIBIT 54  Alpha GRP Unaudited   324      435
                    Financials (Consolidated)
                    Income Statement from
14                     Jan 2017 to Dec 2017

15   EXHIBIT 55  Minutes of a Meeting of  331      435
                    The Board of Directors
16                     of Alpha GRP, Inc. held
                    on April 2nd, 2018
17

18   EXHIBIT 56  Declaration Re Interested 369      435
                    Party List

19   EXHIBIT 57  E-mail from Ryan Small to 381      435
                    Joseph Miller, Ray Musci,
20                     Daniel Chan, Colin Dyne
                    and others dated 4-6-18
21

22   EXHIBIT 58  E-mail from Ryan Small to 382      435
                    Joseph Miller, Ray Musci,
                    Daniel Chan, Colin Dyne
23                     and others dated 4-19-18

24

25

Page 204

E X H I B I T S

(Continued)

| EXHIBIT | DESCRIPTION | IDENTIFIED | MARKED |
|---------|-------------|------------|--------|
| EXHIBIT 59 | Alpha (assignment for the benefit of creditors), LLC | 384 | 435 |
| EXHIBIT 60 | E-mail from Colin Dyne to Andrea Sobel; Colby Rodriguez, Chip Pankow and Jeff Swoboda dated 4-10-18 | 406 | 435 |
| EXHIBIT 61 | Stipulation and Order Regarding Contact and Communications Between Colin Dyne, Robert Weir, and the Parties to This Action | 419 | 435 |
| EXHIBIT 62 | E-mail from Colin Dyne to Andrea Sobel dated 5-25-17 | 420 | 435 |
| EXHIBIT 63 | Agreement to Abandon back to Alpha GRP, Inc. Certain Litigation Rights, Claims and Interests by Alpha (assignment for the Benefit of creditors), LLC. | 429 | 435 |

INSTRUCTION NOT TO ANSWER

| PAGE | LINE |
|------|------|
| 214 | 3 |
| 214 | 8 |
| 217 | 16 |
| 218 | 3 |

Page 205

```
 1           I N D E X

 2           (Continued)

 3

 4    INSTRUCTION NOT TO ANSWER

 5

 6           PAGE    LINE

 7           218      14

 8           230      22

 9           278       7

10           380      12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 206

1                    Los Angeles, California

2        Thursday, September 5, 2019, 10:43 a.m. - 5:12 p.m.

3

4        THE VIDEOGRAPHER:  We are on the record.  The time is

5    10:43 a.m.  The date is September 5th, 2019.  This is the

6    beginning of media number 1 in the deposition of Colin

7    Dyne, Volume I, taken by the defense in the matter of

8    Alpha GRP versus Subaru of America, Inc.  The case number

9    is 2:18-cv-02133.  This deposition is being held at

10   2029 Century Park East, Century City, California.

11            The court reporter is Robin Bittel.  I am Brian

12   Murphy, the videographer, an employee of Litigation

13   Services, located at 3770 Howard Hughes Parkway,

14   Las Vegas, Nevada.  This deposition is being videotaped at

15   all times unless specified to go off the video

16   record.

17            Would all present please identify themselves,

18   beginning with the witness?

19       THE WITNESS:  Colin Selwyn Dyne.

20       MR. BOWSE:  Michael Bowse on behalf of the plaintiff

21   Alpha GRP, and the witness.

22       MR. HUMPHREYS:  Scott Humphreys, of Ballard Spahr LLP,

23   on behalf of Defendant Subaru of America, Inc.

24            I'll also just say for the record that this is

25   Volume II, or the second day of Mr. Dyne's deposition,

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 217

 1    anyone else at Alpha GRP who would have a specific

 2    knowledge about the damages being alleged in this case?

 3        MR. BOWSE:  Objection.  Calls for speculation.

 4        THE WITNESS:  I don't believe so.

 5        MR. HUMPHREYS:

 6        Q.   So in paragraph 65, "Alpha GRP alleges there's

 7    been damage by Subaru's conduct," sub 1 is "The loss of

 8    Subaru's commitment to race three cars in the 2018 Series

 9    and the consideration Subaru agreed to pay in connection

10    with that agreement."

11             Do you see that?

12        A.   Yes, I do.

13        Q.   Do you still take the -- that position they're --

14    Alpha's been damaged in that way?

15        A.   Yes.

16        Q.   What would be the amount of that loss?

17        MR. BOWSE:  Objection.  Calls for expert testimony,

18    work-product doctrine.

19             Instruct not to answer.

20        MR. HUMPHREYS:

21        Q.   Are you going to follow your attorney's

22    instruction?

23        A.   Yes.

24        Q.   So you do agree that -- you do understand that

25    this allegation says there's a loss, and you agree that

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 218

1  there's been a loss?

2      A.   A substantial loss, yes.

3      Q.   **And what would that substantial loss be?**

4      MR. BOWSE:  Objection.  Calls for expert testimony,

5  attorney work-product doctrine.

6           Instruct not to answer.

7      MR. HUMPHREYS:

8      Q.   **Do you personally have an understanding of any**

9  **loss related to Subaru as alleged in subparagraph 1 of 65?**

10     MR. BOWSE:  Objection.  The question is vague.

11          You can answer that yes or no.

12     THE WITNESS:  Yes.

13     MR. HUMPHREYS:

14     Q.   **What is your personal understanding of the loss**

15  **suffered by Subaru -- I'm sorry -- of the loss suffered as**

16  **a result of the alleged lack of Subaru's commitment to**

17  **participate -- race three cars in the 2018 Series and the**

18  **consideration Subaru agreed to pay in connection with that**

19  **agreement?**

20     MR. BOWSE:  Objection.  The question is vague.  Calls

21  for expert testimony, attorney work-product

22  doctrine.

23          Instruct not to answer.

24     MR. HUMPHREYS:  So we could go through the rest of

25  this, but I'll just ask Mr. Bowse.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 219

1          Are you now -- are you going to defer to your

2     expert to quantify the damages in this case?

3          MR. BOWSE:  The -- well, I mean, ultimately a jury

4     will quantify the damages in the case; right?

5          MR. HUMPHREYS:

6          **Q.   So, Mr. Dyne, you will not be providing testimony**

7     **as to the damages that Alpha GRP has suffered in this --**

8     **allegedly has suffered in this case?**

9          A.   I'm not an expert.

10         **Q.   I understand.**

11              **Are you -- is it your intention to provide**

12    **testimony in this case as to the damages that Alpha GRP**

13    **has suffered?**

14         MR. BOWSE:  Objection.  The question is vague, calls

15    for speculation.  It's an incomplete hypothetical.

16         MR. HUMPHREYS:  Okay.

17              Mr. Bowse, then you're -- you're instructing the

18    witness not to answer with respect to any of my questions

19    as to damages.

20              Does that mean that we'll receive an expert

21    report, and that will be the sole basis for quantification

22    of damages in this case?

23         MR. BOWSE:  No.  I think you're misunderstanding my --

24    my objections.  My -- my objection is to questions that go

25    to issues that the -- that an expert would opine upon.

Page 220

1          You have been asking questions and there are

2     questions that the witness can answer that wouldn't, I

3     think, spill over into expert testimony.

4          MR. HUMPHREYS:  Okay.

5          Well, with respect to the amount of damages, is

6     it your position that this witness -- or you'll instruct

7     this witness not to answer about the amount of any damages

8     because that is an expert that will be presented by expert

9     testimony?

10         MR. BOWSE:  The calculated amount, yes.

11         MR. HUMPHREYS:  That would be for each component of

12     any damages alleged?

13         MR. BOWSE:  The calculated amount, yes.

14         MR. HUMPHREYS:  When you say "calculated," what --

15     what do you mean, versus non-calculated?

16         MR. BOWSE:  Well, I mean to the extent that there are,

17     you know, components of -- of -- of damages of particular

18     things that you want to ask about that are factual in --

19     in nature as opposed to, you know, what is the -- what is

20     the number that you end up with?

21          I think the witness can testify to that but not

22     the -- not the calculation of the damages or the method of

23     calculating them.

24         MR. HUMPHREYS:  Okay.

25          Well, I just want to be clear.

Page 221

1       Q.    Mr. Dyne, are you going to testify about damages?

2    Because if so, you need to answer my questions.

3             Otherwise we're going to move to have any

4    testimony by you stricken at any point in time, including

5    at trial, with respect to damages.

6       A.    Let me -- let me try and help you, and I'll be

7    clear.

8       Q.    Thank you.

9       A.    Okay?

10            I am going to testify about the damages that

11   Subaru caused the company.  I'm going to testify to the

12   amount of investment that was made into the company.  I'm

13   going to testify to all the subversion and things that

14   were created by Subaru.

15            I'm not going to testify to the dollar amount.

16   I'm going to leave that to the expert in this case, but I

17   will testify to the facts in the case surrounding the

18   damages that Subaru caused the company, but I won't

19   testify to the dollar amount.

20      Q.    Okay.

21            So let's go through that then.  Let me just ask

22   you broadly.

23            Why don't you just itemize the losses that you

24   feel Alpha GRP has suffered as a result of Subaru's

25   actions?

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 222

```
 1      A.    Sitting here today, I only have one statement to
 2   make -- is that Subaru was the cause of the destruction of
 3   Alpha GRP.
 4            And there's many allegations in this lawsuit, and
 5   I'm sure there will be many more that will come out, but
 6   I can't sit here today and detail those with you.
 7            If you want to go through each one and you want
 8   me to add to those, I'll be glad to do that.  But in
 9   summary, that's -- that's my position.
10      Q.    So you're saying that Alpha GRP would be
11   operating today if it wasn't for Subaru?
12            Is that what you're -- is that what you're
13   saying?
14      A.    Yes.
15      Q.    Would Alpha GRP be profitable today if it wasn't
16   for Subaru?
17      MR. BOWSE:  Objection.  Calls for speculation,
18   incomplete hypothetical, calls for expert testimony.
19      THE WITNESS:  I don't see the relevance of that.
20      MR. HUMPHREYS:
21      Q.    Well --
22      A.    Why don't you ask it to me again so I can break
23   it up a little bit?
24      Q.    Sure.
25            I'll have the court reporter read it back.
```

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

 1          (Record read.)

 2      MR. BOWSE:  Yeah, I'll also object.  It calls for a

 3  lay opinion.

 4          But you can testify to your personal opinion if

 5  you have one.

 6      THE WITNESS:  Can you clarify what "profitable" means?

 7      MR. HUMPHREYS:

 8  Q.   Well, I -- I -- I'm asking.  You can clarify what

 9  you -- however you interpret that.

10  A.   I -- I can't answer that.

11          Would -- would it be profitable that, if Subaru

12  was there -- Subaru was -- was there?

13          It's -- it's possible it could be.  Possible it

14  could still sustain losses.

15  Q.   So you say "still sustain losses."

16          Does that mean that Alpha GRP sustained losses

17  before it terminated in April 2018?

18  A.   Yes.

19  Q.   Was Alpha GRP -- did Alpha GRP always sustain

20  losses every year that it was in operation?

21  A.   Yes.

22  Q.   So that would be -- 2016, 2017, it had losses?

23  A.   Yes.

24  Q.   What were those losses?

25  A.   I don't recall exactly.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 224

1       Q.    Would those losses be documented in financial

2   statements?

3       A.    Yes.

4       Q.    Did you review those as CEO of Alpha GRP?

5       A.    Yes.

6       Q.    Let's go back to paragraph 65, sub 1.

7             You say that "Alpha GRP has been damaged by the

8   loss of Subaru's commitment to race three cars."

9             Sub 2 says, "The loss of Volkswagen Group's

10  participation in 2018 Series and consideration Volkswagen

11  would have paid to participate in the 2018 Series."

12            Does Alpha GRP still allege damages based on loss

13  of Volkswagen Group's participation as set forth in the

14  sub 2?

15      MR. BOWSE:  Objection.  The question is vague,

16  confusing and lacks foundation, and the document speaks

17  for itself.  The complaint speaks for itself.

18            But you can -- you can answer.

19      THE WITNESS:  I can't answer that if you take that

20  just out of context.  I think in the context of the suit,

21  all the pieces work together.  But individually, I can't

22  answer individual claims that don't work in concert with

23  each other.

24      MR. HUMPHREYS:

25      Q.    Well, it's a simple question.  This is an

Page 225

1   allegation in a -- in a complaint that was filed by

2   Alpha GRP, Inc.

3           So my question is -- Alpha GRP makes an

4   allegation in subparagraph 2 of 65.

5       A.   Uh-huh.

6       Q.   Is that still Alpha GRP's contention today?

7       MR. BOWSE:  Objection.  The document speaks for

8   itself.  It's a vague, confusing, incomplete hypothetical.

9           But you can answer.

10      THE WITNESS:  I'm not an attorney, and I -- I don't,

11  again, want to discuss things out of context in the -- in

12  the -- in the sense of the lawsuit.  I think the lawsuit

13  speaks for itself.

14      MR. HUMPHREYS:  Okay.

15      Q.   What context would you need to answer my

16  questions?

17      A.   I think --

18      MR. BOWSE:  Objection.  Calls for speculation,

19  incomplete hypothetical, calls for a lay opinion.

20      THE WITNESS:  I think all the allegations tie the

21  pieces together.  One allegation by itself and taken out

22  of context is not a fair evaluation of me giving you a

23  correct answer, yes or no, or answering your question.

24          I can't answer a question that's taken out of

25  context, and I believe your question is taken out of

Page 226

1    context.  That's my belief.

2       MR. HUMPHREYS:

3       Q.  How is it taken out of context?

4       A.  Because it's one allegation in the list of -- how

5    many allegations are in this lawsuit?  20, 30, 40.

6       Q.  Well, all I'm asking is -- this allegation was

7    made in June 2018.

8       A.  The allegations in this lawsuit -- maybe this

9    will help you.  The allegations in this lawsuit, I

10   believe, are all true and correct.

11      Q.  All of them?

12          So every allegation in this first amended

13   complaint, you would say, is still true and correct today?

14      A.  Yes.

15      Q.  So --

16      MR. BOWSE:  Objection.  Compound.

17      THE WITNESS:  And I'm not a lawyer.  So I'm just

18   giving you my opinion.

19      MR. HUMPHREYS:

20      Q.  And when you say your opinion, you understand

21   you're testifying on behalf of the company?

22      A.  Yes.

23      Q.  So when you look at paragraph 65, this is a list

24   of the ways that Alpha GRP allege it's been damaged by

25   Subaru's conduct.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 227

 1          As you sit here today, Alpha GRP would maintain

 2    that these -- that it's been damaged in these ways?

 3      A.   By Subaru.

 4      Q.   Yes, has been damaged by Subaru's conduct in

 5    these ways?

 6      A.   Yes.

 7      Q.   That's the allegation?

 8      A.   That's one of the allegations.

 9      Q.   Okay.

10      A.   It says "conduct in numerous ways including, but

11    not limited to," so --

12      Q.   Understood.

13           So what other -- what are the other ways in

14    addition to what's stated in paragraph 65?

15      A.   I think you have to read the whole complaint to

16    come up with all the other ways.  I think they're in the

17    complaint.

18      Q.   Well, I'm asking you.

19      MR. BOWSE:  I'll object to the question on the ground

20    it calls for expert testimony, an incomplete hypothetical,

21    improper lay opinion.

22           But you can answer if you have an understanding.

23      THE WITNESS:  My answer is going to be the complaint

24    speaks for itself.

25      MR. HUMPHREYS:

Page 228

1    Q.   So you were -- you were present at Jeffrey

2    Swoboda's deposition; correct?

3    A.   Yes.

4    Q.   Do you recall that he testified about certain

5    sponsorship agreements for the 2018 Series?

6    A.   I -- I recall him discussing sponsorship

7    agreements, yes.

8    Q.   He discussed an agreement with Total Polaris

9    Continental.

10        Does that sound correct?

11   A.   Yes.

12   Q.   And an agreement with Red Bull?

13   A.   I don't recall him discussing Red Bull agreement.

14   Q.   Is Alpha's position that it was damaged or that

15   it seeks damages related to those sponsorship agreements?

16   MR. BOWSE:  Objection.  Calls for expert testimony,

17   improper lay opinion, incomplete hypothetical.

18        But -- but you can -- you can answer.

19   THE WITNESS:  Can you repeat the question, please?

20        (Record read.)

21   MR. BOWSE:  The question is also vague.

22   THE WITNESS:  Can you be more specific?

23   MR. HUMPHREYS:  Sure.

24   Q.   Let's just -- let's just go through them.

25        This is a document we'll mark as Exhibit 46.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 229

1  This is a "First Amendment to On-Premise and Sponsorship

2  Agreement" between Red Bull North America, Inc., and Alpha

3  GRP, Inc.

4           (Deposition Exhibit 46 was introduced for

5  identification by the Certified Shorthand Reporter and is

6  attached hereto.)

7       MR. HUMPHREYS:

8       Q.   Do you recognize this document?

9       A.   Yes.

10      Q.   What is it?

11      A.   This would be an amendment to the existing

12  on-premise sponsorship agreement.

13      Q.   So this would -- this amendment would be entered

14  into as of January 1st, 2016; correct?

15      A.   Correct.

16      Q.   And this was signed by you as CEO of Alpha GRP,

17  Inc.?

18      A.   That is correct.

19      Q.   And then it was signed by CEO and CFO of Red

20  Bull?

21      A.   That is correct.

22      Q.   Is this the latest agreement with Red Bull prior

23  to Alpha GRP's termination?

24      MR. BOWSE:   Objection.   The question is vague, calls

25  for a legal conclusion.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 230

```
 1        THE WITNESS:  I believe so.

 2        MR. HUMPHREYS:

 3        Q.   And here it has on the first page "Net

 4   Sponsorship Fees" for each contract year.

 5             Do you see that?

 6        A.   Yes.

 7        Q.   So for 2014, 800,000; 2015, 1 million; and so on?

 8        A.   Yes.

 9        Q.   For 2018, it lists, was 1.7 million with four

10   equal installments of $425,000.

11             See that?

12        A.   Yes.

13        Q.   Did Red Bull actually pay any of those amounts

14   for the 2018 Series?

15        A.   Yes.

16        Q.   What did it pay?

17        A.   $425,000.

18        Q.   So just the first installment?

19        A.   Correct.

20        Q.   No other installments?

21        A.   No.

22        Q.   Are you claiming that 425,000 as a measure of

23   damage in this case?

24        MR. BOWSE:  Objection.  The question calls for expert

25   testimony.  It's vague, confusing, attorney work product.
```

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 231

```
 1            Instruct not to answer.
 2       MR. HUMPHREYS:
 3       Q.   Are you going to follow your attorney's
 4   instructions?
 5       A.   Yes.
 6       Q.   Was the $425,000 that you received from Red Bull
 7   under this agreement ever repaid to Red Bull?
 8       A.   No.
 9       Q.   When was it received?
10       A.   I don't know.
11       Q.   Here on page 1, it calls for the first payment to
12   be made on January 10, 2018.
13            Does that refresh your recollection?
14       A.   That's what the agreement says.  It doesn't mean
15   it was paid then.
16       Q.   Do you recall having seen that, that the payment
17   would have been received around January of 2018?
18       A.   I -- I -- I recall that the payment was received.
19   I'm not sure of the date.
20       Q.   Were there any other amounts that Red Bull paid
21   Alpha GRP under this or any other agreement?
22       A.   Yes.
23       Q.   What would those be?
24       A.   They -- they paid for various hospitalities.
25   They paid for various assets that they wanted to -- wanted
```

Page 232

1  to have at the events.  Yeah, they paid those directly to

2  Alpha or they paid those directly to their vendors.

3      **Q.  Do you know approximately how much those**

4  **additional fees would have added up to in any given year?**

5      A.  It -- it -- it would vary from year to year.

6      **Q.  10,000; 50,000?**

7      MR. BOWSE:  Objection.  The question is vague, calls

8  for speculation.

9      THE WITNESS:  I would -- I don't know, but it was --

10  it was a substantial amount of money over the period of

11  the contract.

12      MR. HUMPHREYS:

13      **Q.  When you say "the contract," you mean this**

14  **contract?**

15      A.  Correct.

16      **Q.  Would those amounts -- those would be documented**

17  **in financial statements of the company's?**

18      A.  Yes and no.

19      **Q.  Why no?**

20      A.  Because if Red Bull paid for an asset that they

21  wanted themselves, they would pay it directly to a vendor.

22  It wouldn't go through Alpha.

23      **Q.  I see.**

24      **Did any payments to vendors go directly to**

25  **Alpha?**

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 233

1      A.   I'm not sure what you mean by that.

2      **Q.   I believe you just testified that Red Bull would**

3   **pay vendors directly in some instances.**

4      A.   Their vendors.

5      **Q.   So what would be the difference between their**

6   **vendors, and would it be a vendor by Alpha?**

7      MR. BOWSE:  Objection.  The question is vague and

8   confusing.

9      THE WITNESS:  Their vendor would be a vendor that

10   would -- would operate and maintain their assets.

11      MR. HUMPHREYS:

12      **Q.   And is Alpha GRP alleging damages related to**

13   **those payments in this lawsuit?**

14      MR. BOWSE:  Objection.  The question is vague,

15   confusing, calls for expert testimony.  Complaint speaks

16   for itself.

17          You can answer if you have an understanding

18   outside of conversations you've had with counsel or the

19   expert.

20      THE WITNESS:  Again, I don't -- that's -- that's a

21   question for the -- for the expert, not for me.

22      MR. HUMPHREYS:

23      **Q.   I hand you an exhibit I'm marking as Exhibit 47**

24   **(indicating).**

25          (Deposition Exhibit 47 was introduced for

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 275

1   have been signed before or after that January 16 meeting?

2       A.   Before.

3       Q.   So with respect to any written agreements with

4   NBC and Turner Sports, I'll ask that you and your counsel

5   provide those immediately so that we have copies of them

6   as part of discovery.

7       A.   The Turner Sports agreement was publicly

8   announced on the 12th of January.

9       Q.   By who?

10      A.   By Turner Sports.

11      Q.   And there was a written agreement with Turner

12  before that public announcement?

13      A.   Correct.

14      Q.   And you would have signed that written agreement?

15      A.   Yes, myself or Joe Miller.

16      Q.   Was the structure of that Turner Sports agreement

17  similar to NBC where they would provide a window of time?

18      A.   No.

19      Q.   What was the structure of the Turner Sports

20  agreement?

21      A.   The Turner Sports agreement was a -- was going to

22  be a potentially very lucrative agreement for the company.

23  It was a -- I believe a 70/30 joint venture where we would

24  participate -- where we would participate in 70 percent of

25  the income and Turner would participate in 30 percent of

Page 276

1    the income that was derived from the pay-per-view

2    broadcast that Turner would provide.

3        Q.   So Turner would provide a pay-per-view of an

4    event for 2018?

5        A.   Correct.

6        Q.   And there would be income from viewers?

7        A.   Correct.

8        Q.   Was there sponsorship income as well?

9        A.   There would have been, yes.

10       Q.   And you're saying that this written agreement

11   provided for a 70/30 split of those income streams?

12       A.   Correct.

13       Q.   Are you alleging that those income streams are a

14   measure of damage in this lawsuit?

15       A.   Yes.

16       Q.   What about NBC?

17           You previously said that there was windows of

18   time that you would sell to sponsors.

19           Are you asserting that as a measure of damage?

20       A.   Yes.

21       Q.   Any other damages with respect to NBC or Turner

22   that your -- you, meaning Alpha GRP, is asserting in this

23   lawsuit?

24       A.   I think there's many.  I don't -- I don't --

25   sitting here today, I can't tell you what those are going

Page 277

1    to be.  My -- my legal counsel and, I'm sure, the expert

2    witness will -- or the expert testimony will break those

3    out.

4         MR. BOWSE:  And move to strike the answer to interpose

5    an objection.  Calls for expert testimony.  It's vague,

6    confusing.  Calls for a narrative, lacks foundation.

7         MR. HUMPHREYS:  Okay.

8              Well, the witness has already answered.

9         **Q.   But you're asserting, either way, that your**

10   **expert will testify as to all of these --**

11        A.   Yes.

12        **Q.   -- damages?**

13        A.   Yes.

14        **Q.   Okay.**

15             **With respect to paragraph 71, sub A to I, any**

16   **other basis for damages that Alpha GRP asserts that we**

17   **haven't discussed?**

18        MR. BOWSE:  Objection.  Calls for a legal conclusion,

19   calls for expert testimony.  It's vague and confusing.

20             You can answer.

21        THE WITNESS:  I think there's a myriad of -- a huge

22   amount of damages that we haven't discussed, yes.  My --

23   my testimony is this does not reflect all the damages in

24   this case (indicating).

25        MR. HUMPHREYS:

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 278

1    Q.   All of those damages will be set forth in a

2    report by your expert?

3    A.   Yes.

4    Q.   And you -- as you sit here today, you can't give

5    me any numbers for those damages?

6    A.   No.

7    Q.   Is there a total amount of damages that Alpha is

8    demanding in this lawsuit as you sit here today?

9    MR. BOWSE:  Objection.  Calls for a legal conclusion,

10   calls for expert testimony, work product, attorney-client

11   privilege.

12        Instruct -- instruct not to answer.

13   MR. HUMPHREYS:  I'm handing you documents marked as

14   Exhibit 50 (indicating).

15        (Deposition Exhibit 50 was introduced for

16   identification by the Certified Shorthand Reporter and is

17   attached hereto.)

18   MR. HUMPHREYS:

19   Q.   This is a document -- an e-mail from Daniel Chan

20   to you and Joe Miller, dated March 1st, 2017.  And it's --

21   there's an attachment to it.

22        I'll represent to you there were several

23   attachments to this e-mail which were quite lengthy, in

24   part, because of an Excel document.

25        This is one of those attachments.  It has a

Page 379

1   one day.  They'd get their investment plus whatever profit

2   they made.

3       Q.  So as of April 2nd, 2018, none of the investors

4   listed on this page were repaid on any of their

5   investments?

6       A.  No.

7       MR. BOWSE:  Objection.

8       THE WITNESS:  Sorry.

9       MR. HUMPHREYS:  So if they --

10      MR. BOWSE:  Let me just say I'll move to strike the

11  answer to interpose an objection that it -- the question

12  lacks foundation.  It's vague.

13      MR. HUMPHREYS:

14      Q.  So looking at this page, 51671 --

15      A.  Uh-huh.

16      Q.  -- all of the companies or individuals listed as

17  having lien notes or lien lenders totaling 44.4 million,

18  none of them have been repaid on any of these notes or

19  investments by the company?

20      MR. BOWSE:  Objection.  The question lacks foundation.

21  It's compound.

22      THE WITNESS:  I'm not 100 percent clear on that, but

23  the majority of these investors were not repaid as of that

24  date.

25      MR. HUMPHREYS:  So let me ask the inverse then.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 380

1    Q.   Have any of these investors been repaid on any of

2    the loans or investments identified in this chart as of --

3    from April 2nd, 2018 to the present date?

4         MR. BOWSE:  Objection.  The question is vague.

5         THE WITNESS:  I don't believe so.

6         MR. HUMPHREYS:

7    Q.   And are you -- is it Alpha's position that Subaru

8    is somehow responsible for repaying these investors?

9         A.   Subaru is responsible, as I said earlier, for the

10   destruction of the company which destroyed all of the

11   investors' investment in the company.

12   Q.   So is Alpha seeking damages reflecting the amount

13   of these investments identified on this chart?

14        MR. BOWSE:  Objection.  Calls for a legal conclusion,

15   calls for expert testimony, attorney work product,

16   attorney-client privilege.

17             Instruct not to answer.

18        MR. HUMPHREYS:

19   Q.   Are you going to follow your attorney's

20   instruction?

21        A.   Yes.

22        MR. HUMPHREYS:  Are we on 57?

23        THE REPORTER:  Yes.

24        MR. HUMPHREYS:

25   Q.   I'll hand you a document marked as 57.  This is a

Page 434

1          (Recess taken.)

2      THE VIDEOGRAPHER:  We are on the record.  The time is

3    5:10.

4      MR. HUMPHREYS:  Okay.

5          So before the break, I think we've reached an

6    agreement.  So the expedited transcript will be provided

7    to counsel for the witness by Tuesday or Wednesday,

8    September 10th or 11th.

9          The witness will provide changes or corrections

10   by Monday, September 23rd.  Either party will be able to

11   use the transcript, whether it has been corrected or

12   signed or not, for purposes of any motion, summary

13   judgment.

14          And in the event that there's any subsequent

15   change by the witness, the parties can address that fact

16   and opposition reply or other motions to the court.

17          Counsel to the witness will retain a copy of the

18   original, and a certified copy may be used in lieu of the

19   original for any purpose in this action including at

20   trial, summary -- motions for summary judgment or

21   otherwise.  I think that's it.

22      MR. BOWSE:  Yes.  So stipulated.

23      THE REPORTER:  Would you like a copy?

24      MR. BOWSE:  Yes, please.

25      THE REPORTER:  And do you need a rough?

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 435

1     MR. BOWSE:  No, thank you.

2     THE VIDEOGRAPHER:  This concludes the deposition of

3  Colin Dyne, Volume II, on September 5th, 2019, which

4  consists of three media files.  The original media files

5  will be retained by Litigation Services.

6          Off the video record at 5:12 p.m.

7          (Deposition Exhibit 45 through Exhibit 63 were

8  marked for identification by the Certified Shorthand

9  Reporter and are attached hereto.)

10         (

11  Declaration under penalty of perjury on the following page

12  hereof.)

13                          ***

14

15

16

17

18

19

20

21

22

23

24

25

Page 436

1    STATE OF CALIFORNIA   )   SS

2

3         I, Robin L. Bittel, CSR 6419, CP, RPR, do hereby

4    declare:

5

6         That, prior to being examined, the witness named in

7    the foregoing deposition was by me duly sworn pursuant to

8    Section 2093(b) and 2094 of the Code of Civil Procedure;

9

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to text under my direction.

13

14        I further declare that I have no interest in the

15   event of the action.

16

17        I declare under penalty of perjury under the laws of

18   the State of California that the foregoing is true and

19   correct.

20

21        WITNESS my hand this 10th day of September, 2019.

22

23   _____

24   Robin L. Bittel, CSR No. 6419, CP, RPR

25