Michael A. Bowse (SBN 189659)
mbowse@bowselawgroup.com
**BOWSE LAW GROUP**
801 S. Figueroa St., 25th Floor
Los Angeles, CA 90017
Phone/Fax: (213) 344-4700

Attorneys for Plaintiff ALPHA GRP.,
INC. d/b/a RED BULL GLOBAL
RALLYCROSS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA GRP., INC. d/b/a RED BULL GLOBAL RALLYCROSS, a Delaware Corporation,<br><br>               Plaintiff,<br><br>vs.<br><br>SUBARU OF AMERICA, INC., a New Jersey Corporation<br><br>           Defendants | Case No.: 2:18-cv-02133-MWF<br><br>**DECLARATION OF MICHAEL A. BOWSE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION TO STRIKE**<br><br>Action Filed:    March 14, 2018 |

I, Michael A. Bowse, declare as follows:

      1.     I am an attorney at law, licensed to practice in the State of California and before this Court.  I am counsel for Plaintiff ALPHA GRP, Inc. in this matter.  I make the following declaration based upon my own personal knowledge.

      2.     Attached hereto as Exhibit A are true and correct copies of excerpts from the Deposition of Colin Dyne, taken in this action on September 5, 2019.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Executed this 22nd day of November 2019, at Los Angeles, California.

                               /s/ Michael A. Bowse      .
                                 Michael A. Bowse

DECLARATION OF MICHAEL BOWSE IN OPPOSITION TO EX PARTE MOTION TO STRIKE

# EXHIBIT A

1                  UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4

5   ALPHA GRP, INC. d/b/a RED      )
    BULL GLOBAL RALLYCROSS, a      )
6   Delaware Corporation,          )
                                   )
7              Plaintiff,          )
                                   )
8       vs.                        ) Case No. 2:18-cv-02133-MWF
                                   )
9   SUBARU OF AMERICA, INC., a     )
    New Jersey Corporation,        )
10                                 )
               Defendant.          )
11  _____)

12

13

14        Videotaped Deposition of COLIN SELWYN DYNE,

15        Volume II, taken on behalf of Defendants, taken

16        at 2029 Century Park East, Suite 800, Los Angeles,

17        California, at 10:43 a.m., on Thursday, September 5,

18        2019, before Robin L. Bittel, CSR 6419.

19

20        Job Number.: 572225

21

22

23

24

25

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 201

```
 1   APPEARANCES OF COUNSEL:

 2

 3   For Plaintiff:

 4   BOWSE LAW GROUP

 5   BY MICHAEL A. BOWSE

 6   801 South Figueroa Street, 25th Floor

 7   Los Angeles, California  90017

 8   Telephone:  (213) 344-4700

 9   Facsimile:  (213) 344-4700

10   mbowse@bowselawgroup.com

11

12   For Defendant:

13   BALLARD SPAHR LLP

14   BY SCOTT S. HUMPHREYS

15   BY NEAL WALTERS (present via videoconference)

16   2029 Century Park East, Suite 800

17   Los Angeles, California  90067

18   Telephone:  (424) 204-4400

19   Facsimile:  (424) 204-4350

20   humphreyss@ballardspahr.com

21

22   Also Present:  Brian Murphy, Videographer

23

24

25
```

Page 207

1   which is resumed.

2       THE VIDEOGRAPHER:  And would the court reporter please

3   swear in the witness?

4       THE REPORTER:  Do you want to say who else is present?

5       MR. HUMPHREYS:  Oh, thank you.

6           So also present by video conference is my

7   colleague Neal Walters, also of Ballard Spahr.

8   Mr. Walters took the deposition of Mr. Dyne on day one,

9   and he'll be observing by video conference but not

10  directly participating.

11      THE REPORTER:  Thank you.

12

13                      COLIN SELWYN DYNE,

14  having been first duly sworn by the Certified Shorthand

15  Reporter, was examined and testified as follows:

16

17                      EXAMINATION

18

19  BY MR. HUMPHREYS:

20      Q.   Good morning, Mr. Dyne.

21      A.   Good morning.

22      Q.   So you understand this is a continuation of your

23  prior testimony?

24      A.   Yes.

25      Q.   You're still under oath?

Page 217

1   anyone else at Alpha GRP who would have a specific

2   knowledge about the damages being alleged in this case?

3        MR. BOWSE:  Objection.  Calls for speculation.

4        THE WITNESS:  I don't believe so.

5        MR. HUMPHREYS:

6        Q.   So in paragraph 65, "Alpha GRP alleges there's

7   been damage by Subaru's conduct," sub 1 is "The loss of

8   Subaru's commitment to race three cars in the 2018 Series

9   and the consideration Subaru agreed to pay in connection

10  with that agreement."

11            Do you see that?

12       A.   Yes, I do.

13       Q.   Do you still take the -- that position they're --

14  Alpha's been damaged in that way?

15       A.   Yes.

16       Q.   What would be the amount of that loss?

17       MR. BOWSE:  Objection.  Calls for expert testimony,

18  work-product doctrine.

19            Instruct not to answer.

20       MR. HUMPHREYS:

21       Q.   Are you going to follow your attorney's

22  instruction?

23       A.   Yes.

24       Q.   So you do agree that -- you do understand that

25  this allegation says there's a loss, and you agree that

Page 218

1    there's been a loss?

2        A.    A substantial loss, yes.

3        Q.    **And what would that substantial loss be?**

4        MR. BOWSE:  Objection.  Calls for expert testimony,

5    attorney work-product doctrine.

6              Instruct not to answer.

7        MR. HUMPHREYS:

8        Q.    **Do you personally have an understanding of any**

9    **loss related to Subaru as alleged in subparagraph 1 of 65?**

10       MR. BOWSE:  Objection.  The question is vague.

11             You can answer that yes or no.

12       THE WITNESS:  Yes.

13       MR. HUMPHREYS:

14       Q.    **What is your personal understanding of the loss**

15   **suffered by Subaru -- I'm sorry -- of the loss suffered as**

16   **a result of the alleged lack of Subaru's commitment to**

17   **participate -- race three cars in the 2018 Series and the**

18   **consideration Subaru agreed to pay in connection with that**

19   **agreement?**

20       MR. BOWSE:  Objection.  The question is vague.  Calls

21   for expert testimony, attorney work-product

22   doctrine.

23             Instruct not to answer.

24       MR. HUMPHREYS:  So we could go through the rest of

25   this, but I'll just ask Mr. Bowse.

1          Are you now -- are you going to defer to your

2     expert to quantify the damages in this case?

3          MR. BOWSE:  The -- well, I mean, ultimately a jury

4     will quantify the damages in the case; right?

5          MR. HUMPHREYS:

6          **Q.   So, Mr. Dyne, you will not be providing testimony**

7     **as to the damages that Alpha GRP has suffered in this --**

8     **allegedly has suffered in this case?**

9          A.   I'm not an expert.

10         **Q.   I understand.**

11              **Are you -- is it your intention to provide**

12    **testimony in this case as to the damages that Alpha GRP**

13    **has suffered?**

14         MR. BOWSE:  Objection.  The question is vague, calls

15    for speculation.  It's an incomplete hypothetical.

16         MR. HUMPHREYS:  Okay.

17              Mr. Bowse, then you're -- you're instructing the

18    witness not to answer with respect to any of my questions

19    as to damages.

20              Does that mean that we'll receive an expert

21    report, and that will be the sole basis for quantification

22    of damages in this case?

23         MR. BOWSE:  No.  I think you're misunderstanding my --

24    my objections.  My -- my objection is to questions that go

25    to issues that the -- that an expert would opine upon.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 220

1          You have been asking questions and there are

2    questions that the witness can answer that wouldn't, I

3    think, spill over into expert testimony.

4        MR. HUMPHREYS:  Okay.

5          Well, with respect to the amount of damages, is

6    it your position that this witness -- or you'll instruct

7    this witness not to answer about the amount of any damages

8    because that is an expert that will be presented by expert

9    testimony?

10       MR. BOWSE:  The calculated amount, yes.

11       MR. HUMPHREYS:  That would be for each component of

12   any damages alleged?

13       MR. BOWSE:  The calculated amount, yes.

14       MR. HUMPHREYS:  When you say "calculated," what --

15   what do you mean, versus non-calculated?

16       MR. BOWSE:  Well, I mean to the extent that there are,

17   you know, components of -- of -- of damages of particular

18   things that you want to ask about that are factual in --

19   in nature as opposed to, you know, what is the -- what is

20   the number that you end up with?

21          I think the witness can testify to that but not

22   the -- not the calculation of the damages or the method of

23   calculating them.

24       MR. HUMPHREYS:  Okay.

25          Well, I just want to be clear.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 221

1    Q.   Mr. Dyne, are you going to testify about damages?

2    Because if so, you need to answer my questions.

3         Otherwise we're going to move to have any

4    testimony by you stricken at any point in time, including

5    at trial, with respect to damages.

6    A.   Let me -- let me try and help you, and I'll be

7    clear.

8    Q.   Thank you.

9    A.   Okay?

10        I am going to testify about the damages that

11   Subaru caused the company.  I'm going to testify to the

12   amount of investment that was made into the company.  I'm

13   going to testify to all the subversion and things that

14   were created by Subaru.

15        I'm not going to testify to the dollar amount.

16   I'm going to leave that to the expert in this case, but I

17   will testify to the facts in the case surrounding the

18   damages that Subaru caused the company, but I won't

19   testify to the dollar amount.

20   Q.   Okay.

21        So let's go through that then.  Let me just ask

22   you broadly.

23        Why don't you just itemize the losses that you

24   feel Alpha GRP has suffered as a result of Subaru's

25   actions?

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 222

1    A.    Sitting here today, I only have one statement to

2    make -- is that Subaru was the cause of the destruction of

3    Alpha GRP.

4          And there's many allegations in this lawsuit, and

5    I'm sure there will be many more that will come out, but

6    I can't sit here today and detail those with you.

7          If you want to go through each one and you want

8    me to add to those, I'll be glad to do that.  But in

9    summary, that's -- that's my position.

10   Q.    So you're saying that Alpha GRP would be

11   operating today if it wasn't for Subaru?

12         Is that what you're -- is that what you're

13   saying?

14   A.    Yes.

15   Q.    Would Alpha GRP be profitable today if it wasn't

16   for Subaru?

17   MR. BOWSE:  Objection.  Calls for speculation,

18   incomplete hypothetical, calls for expert testimony.

19   THE WITNESS:  I don't see the relevance of that.

20   MR. HUMPHREYS:

21   Q.    Well --

22   A.    Why don't you ask it to me again so I can break

23   it up a little bit?

24   Q.    Sure.

25         I'll have the court reporter read it back.

Page 223

1           (Record read.)

2      MR. BOWSE:  Yeah, I'll also object.  It calls for a

3  lay opinion.

4           But you can testify to your personal opinion if

5  you have one.

6      THE WITNESS:  Can you clarify what "profitable" means?

7      MR. HUMPHREYS:

8      Q.   Well, I -- I -- I'm asking.  You can clarify what

9  you -- however you interpret that.

10     A.   I -- I can't answer that.

11          Would -- would it be profitable that, if Subaru

12  was there -- Subaru was -- was there?

13          It's -- it's possible it could be.  Possible it

14  could still sustain losses.

15     Q.   So you say "still sustain losses."

16          Does that mean that Alpha GRP sustained losses

17  before it terminated in April 2018?

18     A.   Yes.

19     Q.   Was Alpha GRP -- did Alpha GRP always sustain

20  losses every year that it was in operation?

21     A.   Yes.

22     Q.   So that would be -- 2016, 2017, it had losses?

23     A.   Yes.

24     Q.   What were those losses?

25     A.   I don't recall exactly.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 224

1    Q.   Would those losses be documented in financial

2    statements?

3    A.   Yes.

4    Q.   Did you review those as CEO of Alpha GRP?

5    A.   Yes.

6    Q.   Let's go back to paragraph 65, sub 1.

7         You say that "Alpha GRP has been damaged by the

8    loss of Subaru's commitment to race three cars."

9         Sub 2 says, "The loss of Volkswagen Group's

10   participation in 2018 Series and consideration Volkswagen

11   would have paid to participate in the 2018 Series."

12        Does Alpha GRP still allege damages based on loss

13   of Volkswagen Group's participation as set forth in the

14   sub 2?

15   MR. BOWSE:  Objection.  The question is vague,

16   confusing and lacks foundation, and the document speaks

17   for itself.  The complaint speaks for itself.

18        But you can -- you can answer.

19   THE WITNESS:  I can't answer that if you take that

20   just out of context.  I think in the context of the suit,

21   all the pieces work together.  But individually, I can't

22   answer individual claims that don't work in concert with

23   each other.

24   MR. HUMPHREYS:

25   Q.   Well, it's a simple question.  This is an

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 225

 1   allegation in a -- in a complaint that was filed by

 2   Alpha GRP, Inc.

 3          So my question is -- Alpha GRP makes an

 4   allegation in subparagraph 2 of 65.

 5   A.   Uh-huh.

 6   Q.   Is that still Alpha GRP's contention today?

 7   MR. BOWSE:  Objection.  The document speaks for

 8   itself.  It's a vague, confusing, incomplete hypothetical.

 9          But you can answer.

10   THE WITNESS:  I'm not an attorney, and I -- I don't,

11   again, want to discuss things out of context in the -- in

12   the -- in the sense of the lawsuit.  I think the lawsuit

13   speaks for itself.

14   MR. HUMPHREYS:  Okay.

15   Q.   What context would you need to answer my

16   questions?

17   A.   I think --

18   MR. BOWSE:  Objection.  Calls for speculation,

19   incomplete hypothetical, calls for a lay opinion.

20   THE WITNESS:  I think all the allegations tie the

21   pieces together.  One allegation by itself and taken out

22   of context is not a fair evaluation of me giving you a

23   correct answer, yes or no, or answering your question.

24          I can't answer a question that's taken out of

25   context, and I believe your question is taken out of

Page 226

1   context.  That's my belief.

2        MR. HUMPHREYS:

3        Q.   How is it taken out of context?

4        A.   Because it's one allegation in the list of -- how

5   many allegations are in this lawsuit?  20, 30, 40.

6        Q.   Well, all I'm asking is -- this allegation was

7   made in June 2018.

8        A.   The allegations in this lawsuit -- maybe this

9   will help you.  The allegations in this lawsuit, I

10  believe, are all true and correct.

11       Q.   All of them?

12            So every allegation in this first amended

13  complaint, you would say, is still true and correct today?

14       A.   Yes.

15       Q.   So --

16       MR. BOWSE:  Objection.  Compound.

17       THE WITNESS:  And I'm not a lawyer.  So I'm just

18  giving you my opinion.

19       MR. HUMPHREYS:

20       Q.   And when you say your opinion, you understand

21  you're testifying on behalf of the company?

22       A.   Yes.

23       Q.   So when you look at paragraph 65, this is a list

24  of the ways that Alpha GRP allege it's been damaged by

25  Subaru's conduct.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 227

1        As you sit here today, Alpha GRP would maintain
2   that these -- that it's been damaged in these ways?
3        A.   By Subaru.
4        Q.   Yes, has been damaged by Subaru's conduct in
5   these ways?
6        A.   Yes.
7        Q.   That's the allegation?
8        A.   That's one of the allegations.
9        Q.   Okay.
10       A.   It says "conduct in numerous ways including, but
11   not limited to," so --
12       Q.   Understood.
13            So what other -- what are the other ways in
14   addition to what's stated in paragraph 65?
15       A.   I think you have to read the whole complaint to
16   come up with all the other ways.  I think they're in the
17   complaint.
18       Q.   Well, I'm asking you.
19       MR. BOWSE:  I'll object to the question on the ground
20   it calls for expert testimony, an incomplete hypothetical,
21   improper lay opinion.
22            But you can answer if you have an understanding.
23       THE WITNESS:  My answer is going to be the complaint
24   speaks for itself.
25       MR. HUMPHREYS:

Page 276

1    the income that was derived from the pay-per-view

2    broadcast that Turner would provide.

3        Q.   So Turner would provide a pay-per-view of an

4    event for 2018?

5        A.   Correct.

6        Q.   And there would be income from viewers?

7        A.   Correct.

8        Q.   Was there sponsorship income as well?

9        A.   There would have been, yes.

10       Q.   And you're saying that this written agreement

11   provided for a 70/30 split of those income streams?

12       A.   Correct.

13       Q.   Are you alleging that those income streams are a

14   measure of damage in this lawsuit?

15       A.   Yes.

16       Q.   What about NBC?

17            You previously said that there was windows of

18   time that you would sell to sponsors.

19            Are you asserting that as a measure of damage?

20       A.   Yes.

21       Q.   Any other damages with respect to NBC or Turner

22   that your -- you, meaning Alpha GRP, is asserting in this

23   lawsuit?

24       A.   I think there's many.  I don't -- I don't --

25   sitting here today, I can't tell you what those are going

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 365

1   responsible for the company -- company's failure, and

2   there's a number of adverse events we looked at.

3           Are you also claiming Subaru is responsible for

4   all of these adverse events?

5       MR. BOWSE:  Objection.  The question is compound.

6   It's vague.

7       THE WITNESS:  The ones that related to the shutdown of

8   the company.  So everything C and below, yes.

9       MR. HUMPHREYS:

10      Q.   Okay.

11          So Subaru was not responsible for "the failure of

12  the Amazon digital rights transaction to be consummated

13  consistent with agreed upon terms"?

14      A.   No.

15      Q.   And Subaru is not responsible for "the

16  notification by Honda that budget cuts will not allow them

17  to continue racing in the series, which, among other

18  things substantially reduced the series field size"?

19      A.   No.

20      Q.   Are you saying Subaru is responsible for "The

21  suspension of the Corporation's plan Regulation A+ IPO"?

22      A.   100 percent.

23      Q.   Did you ever tell Subaru about any planned IPO?

24      A.   I think we told Subaru that if they continued to

25  do what they were doing, they would cause a terrible

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 366

1  amount of damage to the company which would be, in effect,

2  an inability for the company to raise money and bring on

3  new sponsors.  There was a conversation.

4      Q.  So I think the answer to my question was, no, you

5  did not tell Subaru at any time the company was

6  contemplating an IPO?

7      MR. BOWSE:  Objection.  Misstates testimony.

8      THE WITNESS:  No, I never told the company's

9  contemplating an -- yeah, well, actually, we might have.

10  We might have.

11      MR. HUMPHREYS:

12      Q.  Well, which is it no, or you might have?

13      A.  Well, I -- we might have because we had a call

14  with all the teams back in 2017, and we were talking about

15  our stakeholders' program, and we did discuss an IPO and

16  that the stakeholders -- the stakeholders' program was

17  giving the team's equity in the company, a percentage of

18  equity.

19          And that equity, in turn, would be valuable based

20  on the fact that the company was contemplating an IPO at

21  some point in time.  And I think it was definitely brought

22  up on a -- on a general call to everybody.

23      Q.  When you say everybody, that was --

24      A.  It would have been Michael Andretti, would have

25  been -- Rob Weir would have been on that call.  Would have

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 367

1  been Lance Smith on that call.  It would have been

2  Volkswagen on that call, Greg Lucia.  It would have been

3  Brian Herta, some team owners.

4        It was a general call about a stakeholders'

5  agreement that we'd been negotiating for quite a while

6  with the teams.  So I'm pretty sure it was brought up.

7        Q.  Any written notice of an IPO or e-mails about an

8  IPO that you recall ever sending?

9        A.  No.

10       Q.  Other than that general discussion of a potential

11  IPO you just discussed, did you ever tell anyone at Subaru

12  about a planned IPO?

13       A.  No.

14       Q.  And sub F is "The termination of NBC by their

15  broadcast commitment for 2018 as a result of the

16  Corporation's inability to satisfy prior year accounts

17  payable obligations."

18        Are you taking the position that Subaru is

19  responsible for that?

20       A.  Yes.

21       Q.  These are the corporation's prior year accounts

22  payable to 2017; right?

23       A.  If the series was continuing in 2018, NBC

24  wouldn't have asked the company to pay the 2017 accounts

25  and cancel the contract.

COLIN SELWYN DYNE, VOLUME II - 09/05/2019

Page 436

1    STATE OF CALIFORNIA  )  SS

2

3        I, Robin L. Bittel, CSR 6419, CP, RPR, do hereby

4    declare:

5

6        That, prior to being examined, the witness named in

7    the foregoing deposition was by me duly sworn pursuant to

8    Section 2093(b) and 2094 of the Code of Civil Procedure;

9

10       That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to text under my direction.

13

14       I further declare that I have no interest in the

15   event of the action.

16

17       I declare under penalty of perjury under the laws of

18   the State of California that the foregoing is true and

19   correct.

20

21       WITNESS my hand this 10th day of September, 2019.

22

23   _____

24   Robin L. Bittel, CSR No. 6419, CP, RPR

25